## State Real Estate Commission v. Bongiorno

*Morris Chernock, Assistant Attorney General,* for appelleee.

*Joseph A. Steedle,* for appellant.

HERMAN, J., July 17, 1968.—This is an appeal by George F. Bongiorno, doing business as Sheraden Realty (hereinafter referred to as Bongiorno, or, appellant), from an order of the State Real Estate Commission dated June 20, 1967, revoking his real estate broker's license effective August 4, 1967.

After a hearing in this court on a petition for a supersedeas, at which certain additional facts were established, which will be referred to later, a supersedeas was granted.

In connection with a single real estate transaction the commission found that appellant had violated

three sections of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended, 63 PS §431, et seq., hereinafter called the act. The findings were that appellant knowingly made a substantial misrepresentation; was guilty of a continued or flagrant course of misrepresentation, or making of false promises through agents or salesmen; and was guilty of an act or conduct in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty: section 10(a) (1), (3) and (7); 63 PS §440(a) (1), (3) and (7).

After a hearing before an examiner the commission made 12 findings of fact, all of which seem to be supported by substantial competent evidence although findings 11 and 12 appear to have little relevancy to the issue before us and none of the findings support conclusion of law no. 4; i.e., that appellant was guilty "of a continued or flagrant course of misrepresentation, or making of false promises through agents or salesmen".

From the testimony taken before the examiner we find that some time prior to November 14, 1964, Roland C. Miller and his wife came to Sheraden Realty to secure the services of that agency in the sale of a property at 30 Danvers Street, Pittsburgh. The Millers dealt exclusively with one Sylvester J. Pastorius, a real estate agent then employed by Sheraden Realty, and never had any dealings with Bongiorno himself. The Millers' asking price for the property was $13,750 but when they were unable to secure this sum they reluctantly agreed to sell to a Robert V. Thompson and wife for the sum of $11,000.

Prior to the execution of an agreement of sale between the parties Bongiorno received from the First Federal Savings and Loan Association of Pittsburgh, based on their appraisal of the property and not on the sales price, a commitment for an $11,000 mort-

gage. Thereafter, on November 14, 1964, a sales agreement was prepared in the office of the Sheraden Realty and executed by the buyers and sellers, in which the consideration was said to be:

"THIRTEEN THOUSAND SEVEN HUNDRED FIFTY ($13,750.00) DOLLARS, payable TWO THOUSAND SEVEN HUNDRED FIFTY ($2,750.00) DOLLARS on or before the signing of this Agreement, receipt of which is hereby acknowledged, and balance of ELEVEN THOUSAND ($11,000.00) DOLLARS in cash at time of settlement.

"Deposited with Sheraden Realty FIVE HUNDRED ($500.00) DOLLARS held in escrow to be applied toward closing cost".

It is not clear who prepared this agreement nor under whose immediate direction it was prepared but it certainly was prepared under the *general* direction of Sheraden Realty, for whose actions Bongiorno is responsible. At the time of the preparation of the agreement and at all times thereafter the buyers intended to pay and the sellers to receive only $11,000 and not $13,750; and the sum of $2,750 was not paid at or before the signing of the agreement, nor was such payment intended by the parties. The evidence leaves no doubt but that Bongiorno knew or should have known that the terms of the agreement did not accurately reflect the intent of the parties nor the actual selling price of the property.

On December 1, 1964, a written application for a mortgage loan on these premises was mailed by Bongiorno to First Federal Savings and Loan along with his covering letter and the copy of the sales agreement. The mortgage loan application was *signed* by the purchasers and *witnessed* by Bongiorno, and under the title "Loan Information" the application indicates that the purchase price was $13,750 and that $2,750 "Hand Money" had been paid.

At the time set for closing the transaction an officer of the savings and loan association discovered that the $2,750 had not been paid and that it was not going to be paid and consequently the savings and loan association refused to go through with the transaction and the sale was never consummated.

Neither the buyers nor the sellers were ever misled in any way, and neither they nor the savings and loan association made any verified written complaint to the commission concerning this transaction.

Pursuant to section 10 of the act, 63 PS §440, the commission, on its own motion, investigated this transaction and the operations of Sheraden Realty in general, and issued a citation averring that Bongiorno had violated subsections (1), (2), (3), (7) and (11)(v) of section 10 of the act. As a result of the testimony adduced at the hearing the commission found violations of only subsections (1), (3) and (7).

We are not impressed with the explanation of Bongiorno and Pastorius that the real purchase price was $13,750 and that the $2,750 was a rebate given by the sellers to the buyers and that therefore there was no substantial misrepresentation nor any conduct demonstrating incompetency, bad faith, or dishonesty. We have no doubt that this was an inflation of the purchase price to induce the savings and loan association to take a mortgage in the amount of $11,-000. We are concerned, however, with the commission's conclusion that Bongiorno was guilty of "a continued or flagrant course of misrepresentation, or making of false promises through agents or salesmen".

There is no evidence of any *course of conduct* nor of any promises whatever. All of the testimony deals with one transaction and we hold what was implied in State Real Estate Commission v. Campbell, 39 D.

& C. 2d 749, 85 Dauph. 233 (1966), that one transaction is not a course of conduct. In light of all of the circumstances it is our judgment that this conclusion of law was not supported by substantial competent evidence nor by any findings of fact.

We cannot, therefore, unqualifiedly affirm the commission's adjudication. Section 44 of the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.44, under which this appeal was taken, authorizes us to set aside or modify an adjudication if it is not affirmed.

In the hearing before this court on the petition for a supersedeas it was disclosed by Bongiorno, and not denied by the commission, that Bongiorno had been a real estate salesman since 1952 and a real estate broker since 1962, and during that entire period of 15 years had never had any complaints against him nor against his real estate business by the commission, nor by anyone else.

Bearing in mind that the Real Estate Brokers License Act is penal and must be strictly construed: Pennsylvania State Real Estate Commission v. Keller, 401 Pa. 454 (1960), and with substantial credible evidence lacking to support one out of three conclusions of law of the commission, we therefore modify the commission's adjudication and enter the following

## ORDER

And now, this July 17, 1968, the order of the State Real Estate Commission, dated June 20, 1967, revoking the license to practice as a real estate broker, No. 19853, issued to George F. Bongiorno, doing business as Sheraden Realty, is hereby modified and the said License issued to George F. Bongiorno, doing business as Sheraden Realty, is suspended for a period of six months.